THE STATE *ex rel.* MARTHA R. RAMSAY *v.* O. S. HANNER and
C. C. GOLDSTON, Ex'rs.

Where the testator had died in November 1863, and his estate was after-
wards rendered insolvent by the results of the war : *Held,*

1. That the executors were not chargeable with Confederate money,
which, upon its refusal by the creditors of the estate, they had divided
amongst the legatees, without taking refunding bonds ;

2. *Nor,* with the value of the slaves which they had allowed the legatees
to take, or to retain ; *but* they were chargeable with the value of the
other personal property, so taken or retained ; .

3. *Nor,* with the Confederate money and bonds, and N. C. Treasury
notes, remaining in the hands of the executors ;

4. *Nor,* with the value of personal property sold by them in November
1863 for Confederate money.

Where land was sold under execution for a debt due to the testator, and
his executors purchased it, paying for it with the debt, and taking title
to themselves : *Held,* that it was optional with the creditors of the es-
tate to charge them with the debt, or with the land.

An executor of a creditor is not required to administer upon the estate
of a deceased debtor.

After the institution of a suit against them by a creditor, (*here,* in Feb.
1868,) executors have a right, under the act of 1866-'7, c. 59, to pay
other debts, without a judgment against them.

(*Fike* v. *Green, ante* 665, approved.)

EXCEPTIONS to a report upon assets, in an action (com-
menced in February 1868,) against executors, tried before
*Tourgee, J.,* at Spring Term 1870, of CHATHAM Court.

George W. Goldston, the testator, died in November 1863,
leaving a considerable estate, mostly in notes and other per-
sonalty, which having been lost by the results of the war, it
was found that the estate was insolvent.    Previously to the
termination of the war his executors had proceeded to wind
up the estate, without apprehension on the score of its in-
debtedness, allowing legatees to receive, or retain their
specific legacies of shares and other personal property.

STATE *ex rel.* RAMSAY *v.* HANNER and GOLDSTON, EX'RS.

After the creditors of the estate refused to receive Confederate money for their claims, they paid a large amount of it then on hand to the legatees. The relator was a ward of the testator, and this suit was brought for the money due to her as such. In the course of the suit a reference was had in regard to assets. The character of the report sufficiently appears from that of the exceptions filed by the relator.

These exceptions were:

1. Because the Commissioner had allowed to the executors certain sums of money paid by them voluntarily since the institution of the present suit;

2. Because he had charged them with $900, as a debt collected from one O. A. Palmer, whereas he ought to have charged them with the value of the land ($3500) which had been sold under an execution for such debt, and which at the sale they had purchased with the same, taking title to themselves;

3. For that, he had not charged them with $8300 in Confederate money, which they had paid to the legatees;

4. For that, he had not charged them with the value of the slaves and other personal property (horses, watches, a piano, &c.,) which they had allowed the respective legatees thereof to take, or to retain;

5. [Abandoned;]

6. Because he had not charged them with $600, due from the estate of R. W. Palmer;

The facts material to this exception were, that said Palmer died insolvent, and that no one had administered upon his estate.

7. Because the Commissioner had not charged them with $2.80 in specie, $1810 in Confederate money, $984 in N. C. Treasury notes, and $4500 in Confederate bonds, now on hand;

8. Because he had not charged them with the value of personal property sold by them in the latter part of 1863 for Confederate money, to the amount of $5,792.65.

His Honor sustained exceptions 3 and 8, and overruled the others.    Both parties appealed.

*Headen,* for the plaintiff.
*Manning, contra.*

READE, J.    The plaintiff's first exception is overruled. The act of 1867, ch. 59, authorizes administrators and executors to pay other debts after suit is brought, and without judgment.

II. The second exception is allowed.    The land, worth $3500, was purchased by the executor with a debt of $900, due the estate of the testator, and a deed was taken to himself.    " If an estate or fund has been changed by breach of trust, the *cestui que trust* may at his option wave its restoration, and may attach and follow it in its altered form : e. g. if a trustee or executor purchase an estate with his trust money or assets, and the fact of his having done so be admitted or distinctly proved, the parties interested in the money may claim the estate :" Adams Eq. 143.

III. The third exception is overruled.    The estate was a very large one, much more than sufficient to pay all the debts.    Eight thousand three hundred dollars in Confederate treasury notes were in the executor's hands, and the creditors would not receive them in payment of their claims. What was the executor to do ?    If he had kept the money it would have been worthless.    He could not invest it with safety ; he supposed that it would eventually belong to the legatees, and therefore, as the best thing he could do under the circumstances, he paid it over to them.    The only seeming error in this is, that he did not take refunding bonds. A

sufficient excuse for this neglect was, that in 1864 no one would have given a refunding bond for Confederate money, and no one could have supposed that he had not retained an abundance to pay debts, and that it turned out otherwise by the accident of the result of the war.

IV. The fourth exception is overruled so far as the value of the slaves is concerned, and allowed as to the value of the other personal property. The executor could not have sold slaves in 1864, except for Confederate money, and that would have been worthless. He did well to keep the slaves, and their emancipation was an accident, for which he is not reponsible : *Fike* v. *Green,* at this term. But it is otherwise with regard to the other property.

V. The fifth exception is abandoned.

VI. The sixth exception is overruled. The executor was not obliged to administer on the insolvent estate of R. W. Palmer, and no one else would.

VII. The seventh exception is overruled, except as to the small sum of specie. The other effects were worthless, without the fault of the executor.

VIII. The eighth exception is overruled, for the reasons stated in disposing of the other exceptions.

There is error. This will be certified, &c.

PER CURIAM. Error.